Taliaferro, J.
delivered the opinion of the Court.
Eli Ball and Henry Saterwhite, representing themselves to be trustees for Mrs. Nancy Horner, filed their petition in this Court, representing that Dennis, a slave of Mrs. Horner, had runaway from their possession; had possessed himself fraudulently of free papers; and whilst going at large, was apprehended, tried as a free man, and convicted of a felony, not punishable with death, in the Superior Court of Law for Spottsylvania county, and by that Court was thereupon sentenced to ,ten years confinement in the penitentiary. Setting forth also, that the said slave was then in the penitentiary, under said sentence, illegally passed upon him; and praying a writ of habeas corpus ad subjiciendum, directed to the superintendent of the penitentiary, to bring the slave before this Court, and for an order discharging him. The writ was granted, and Charles S. Morgan, superintendent of the penitentiary, made his return thereon.
Upon the return of the writ the petitioners introduced witnesses, and proved that the negro named in the re *589 cord accompanying the return, was their property, as . ,, trustees for Mrs. Horner.
Upon the return and evidence the question is presented, whether this Court can by the habeas corpus discharge the slave from the penitentiary, and restore him to his owners.
It appears from the return, and the copy of the record accompanying the return, that the slave Dennis, by the name of William Mayo, at a Court of Oyer and Terminer, held for the corporation of Fredericksburg, on the 8th day of August 1845, was brought before the Court charged with having carried or caused to be carried from the town of Fredericksburg, beyond the Commonwealth, three slaves, the property of William C. Wiatt and Henry W. Wiatt; for which offence he was regularly tried as a free man, found guilty, and sentenced to ten years imprisonment in the penitentiary. Of this offence, that Court had jurisdiction j and its sentence is conclusive and binding until it be reversed. This would be sufficient cause to discharge the habeas corpus in the absence of all other facts, as it would shew that William Mayo is not detained without lawful authority.
It is contended, however, that this is not sufficient cause, for the reason that the evidence heard here shows that William Mayo was not at the time of the trial a free man, but a slave named Dennis, the property of the petitioners. It may be, and probably is true, that he is a slave j but the Court would not from that fact find warrant to order his discharge, and delivery to them. The evidence was heard; and the Court is of opinion irregularly heard; as it implies a power to go behind the sentence and judgment of the Court of the corporation of Fredericksburg: which this Court does not feel itself warranted to do in this case. It is true that “ the writ is in the nature of a writ of error, which brings up the body of the prisoner with the cause of the commit *590 ment.” The Court can enquire into the sufficiency of , that cause ; but if it be the judgment of a Court of competent jurisdiction, it cannot, upon this writ, look beyond the judgment. A judgment, in its nature, con-c^U(^es t^e subject on which it is rendered; and pronounces the law of the case. Marshall, Chief Justice, in Ex parte Tobias Watkins, 3 Peters’ R. 193. These principles apply in this case, and it'is not seen how they are avoided by the fact that the person tried as a free man was not a free man but a slave at the time of the trial. The Court had jurisdiction, and proceeded to judgment; and if this Court were to discharge the convict from the sentence, it would be, not upon the ground that the judgment was a nullity in respect of a free man charged with the offence, but on the ground that the convict was not a free man. Can this Court enquire into that question here ? Can it, when the Court of the corporation of Fredericksburg has pronounced judgment on that matter, open the judgment, hear evidence, and canvass it again ? If it can, how is it to be done, who are to be the parties to the enquiry, and is it, before it proceeds, to ascertain the testimony (if any) before that Court, and try it upon that, or is it to reverse the judgment upon different proof? This question, whether the prisoner was a free man or a slave, might have been tried in the Court of Fredericksburg, a Court having jurisdiction to try the accused, whether a free man or a slave, and whose duty it was to ascertain the status of the prisoner, to enable it to pass sentence. If the Court had not jurisdiction, as it had in this case, to try the prisoner because he was a slave, that is matter of abatement; and the person arraigned may plead it, and object to the jurisdiction: as is declared by this Court, in Tyree’s Case, 2 Ya. Cas. 262. If the matter of objection is not pleaded, it may be looked upon as waived: and so, in no possible respect can the judgment of the Court be a nullity, as it must be shewn to be before, on *591 the authority of Tobias Watkins’s Case, before cited, this writ would be the proper remedy. The Chief Justice iu that case, says: “If the judgment be a nullity, the officer who obeys it is guilty of false imprisonment.” It is believed that no one would attempt to maintain that the superintendent of the penitentiary, in obedience to the judgment of a Court of competent jurisdiction, in respect both of the crime and the person of the convict, would be guilty of a false imprisonment in receiving and detaining the convict.
The question raised in this cause was considered in the case of The Commonwealth v. Tyree, 2 Va. Cas. 262. Tyree, a black man, was indicted in the Superior Court of Caroline county for rape, and pleaded not guilty. On the next day William Tompkins came into Court and exhibited a petition, stating, that the prisoner was his slave, and that his name was Armstead; and prayed a writ of habeas corpus to bring up the slave before the Court, that the legality of his detention might be enquired into. The writ was issued, and the prisoner brought into Court. The jailor made return in substance, that the prisoner, as a free man of colour, was brought before an Examining Court charged with rape, was sent by it to the Superior Court for trial, was indicted before the Superior Court as a free man of co-lour for the offence, was arraigned and pleaded not guilty, and was then in his custody as jailor, awaiting his trial. This return Tompkins traversed; denying that Tyree was a free man of colour; averring that he was the slave of the traverser, and praying that the same might be enquired of by the Court; and that the Court might not take jurisdiction of the offence.
Evidence was taken, proving as fully that Tyree was the slave of Tompkins as the petitioners prove in this case William Mayo to be their slave.
The cause was adjourned to the General Court; and that Court decided, that as the prisoner Tyree did not *592 plead in abatement to the jurisdiction of the Superior Court, no evidence was admissible in support of Tompkins's application, for the purpose of proving that the prisoner was not a free man: and that the record of the Examining Court, remanding the prisoner for trial as a free man, there being no such plea in abatement, was to be taken as conclusive proof, quoad the trial of the prisoner in the Superior Court, that he was free. -
It cannot fail to be observed that that case, though it is supposed to have been influenced by the fact that the prisoner was charged with an offence which, if committed by a slave, would be punishable with death, settles the principles of this.
It settles that though in point of fact, the Court which pronounces judgment may not have jurisdiction to try the offender, if a slave, yet if it tries him as a free man, the judgment is not a nullity, and so cannot be enquired into by this writ, however in some respects, it may partake of the nature of a writ of error.
It may be that the owner of a slave, in ignorance that he is prosecuted, might be the subject of wrong. But this Court cannot therefore now undertake to unsettle the law, and legislate for his redress. This writ never seems to have been given in contemplation of its executing the office it is now called upon to perform. It is a high prerogative writ, the great object of which is the liberation of those who may be imprisoned without sufficient cause. It was framed for the security of liberty. It is now asked by persons claiming to be masters, for the restoration of their slave to their possession. It is not prayed for by William Mayo, but by his masters ; and it seems to the Court that it cannot be granted on their application, when on the same facts it would be denied on his own. By the statute, the writ is to be awarded on the application of the person in custody, or by some other person on his behalf. Whenever applied for it is the application of the prisoner. Whosoever *593 may file the petition, it can only he issued at the instance of the party in custody; or at least with his consent: as no man can be brought up a prisoner without his consent. King v. Reynolds, 6 T. R. 497; King v. Edwards, 7 T. R. 745. Upon these principles, the writ would be discharged if even it were prayed for by the convict, as he could not be now admitted to question the jurisdiction to which by his own act he had submitted ; if even that Court had not, as it certainly had, jurisdiction as to him, whether a slave or a free man of colour.
But the Court goes farther, and is of opinion, that the purposes of the writ cannot be perverted to such uses as this. That it cannot, under colour of an application on behalf of the slave, be used by the master to enable him to take possession of the subject of the writ, as property.
It may be admitted to the fullest extent, that this writ is the proper remedy where there is no other, and yet this writ should be discharged. It is not a question here, whether William Mayo has any other remedy; but whether the masters have another remedy for the loss of their slave of which they complain. The substance and matter of the complaint is the loss of property ; and the remedy sought by the petitioners, is satisfaction for that loss. The remedy contemplated by the authorities, which the writ is to furnish, is the means of remedy for the illegal detention of the person of the applicant, and though the petitioners may suffer pecuniary loss in the deprivation of their property, this is not the tribunal, nor is this writ the means by which they may be redressed.
The Court is therefore of opinion, and doth order that the writ of habeas corpus awarded on the application of the petitioners be discharged; and that the prisoner be remanded.
*594 Duncan, Clapton, and Baker, J. concurred in the • -, judgment.
Christian, and Wilson, J. dissented.
The writ of habeas corpus discharged, and the prisoner remanded.